# ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

```
- - - - - - - - - - - - -X
UNITED STATES OF AMERICA,    :
                             :
          Plaintiff,         :      Criminal No. 06-508
                             :
     vs.                     :
                             :
DANIEL FRONCZAK,             :      TRANSCRIPT OF PLEA
                             :
          Defendant.         :
- - - - - - - - - - - - - -x
```

West Courtroom, First Floor
United States Courthouse
131 East Fourth Street
Davenport, Iowa
Wednesday, November 29, 2006
1:40 p.m.


BEFORE:  THE HONORABLE JAMES E. GRITZNER, Judge.


APPEARANCES:

For the Plaintiff:              CLIFFORD R. CRONK, ESQ.
                                Assistant U.S. Attorney
                                U.S. Courthouse, Suite 310
                                131 East Fourth Street
                                Davenport, Iowa  52801

For the Defendant:              JACK A. SCHWARTZ, ESQ.
                                1800 Third Avenue
                                211 Safety Building
                                Rock Island, Illinois  61201-8019


Terri L. Martin, CSR, RPR, CRR
United States Court Reporter
Room 189, U.S. Courthouse
123 East Walnut Street
Des Moines, Iowa  50309

1    P R O C E E D I N G S

2         (In open court, with defendant present.)

3         THE COURT:  Take a seat, please.

4         We are convened in the matter of the United States

5    versus Daniel Fronczak, Criminal No. 06-508, the court being

6    advised that Mr. Fronczak wishes to enter a plea, and that is

7    the purpose of this hearing.

8         Mr. Fronczak, in the process of this hearing, you're

9    going to be asked a number of questions.  In preparation for

10   that, I'll have the clerk place you under oath.

11        (Defendant sworn by the clerk.)

12        THE COURT:  You can take a seat, sir.

13        Do you understand, Mr. Fronczak, that you're now under

14   oath, sworn to tell the truth, and if you answer any questions

15   today falsely, those answers could be used against you in a

16   separate prosecution for perjury or for making a false statement

17   to the court?

18        THE DEFENDANT:  Yes.

19        THE COURT:  What's your full name, sir?

20        THE DEFENDANT:  Daniel Fronczak, Jr.

21        THE COURT:  How old are you?

22        THE DEFENDANT:  Twenty-eight years old.

23        THE COURT:  How far did you go in school?

24        THE DEFENDANT:  Twelve years, Your Honor.

25        THE COURT:  Have you been treated recently for any

mental illness or any addiction to narcotic drugs of any kind?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you currently under the influence of any drug, medication or alcoholic beverage?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Have you used any of those things in the last 24 hours?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you suffer from any medical condition or physical ailment that would interfere with your ability to understand what we're doing here today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Have you received a copy of the indictment pending against you, the written charges in the case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And have you had an opportunity to fully discuss those charges and the case in general with Mr. Schwartz, your counsel?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Are you fully satisfied with the counsel and representation that's been given to you by Mr. Schwartz?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And is your willingness to plead guilty today the result of the fact that there have been negotiations between Mr. Schwartz and the attorney for the government about

1  how to resolve your case?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Did you have an opportunity to read and
4  discuss the plea agreement with your lawyer before you signed
5  it?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Does that plea agreement represent the
8  entire understanding you have with the government?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And do you understand the terms of the
11  plea agreement?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Has anyone made any other or different
14  promise or assurance to you of any kind in an effort to get you
15  to plead guilty?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  Mr. Fronczak, I will defer accepting the
18  plea agreement until I've had an opportunity to see the
19  presentence investigation report.  Do you understand that the
20  court can reject the plea agreement?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Has anyone attempted in any way to force
23  you to plead guilty in this case?

24          THE DEFENDANT:  No, Your Honor.

25          THE COURT:  Are you pleading guilty of your own free

will because you are guilty, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand the offense to which you would plead guilty today is a felony offense, and if your plea is accepted, you'll be adjudged guilty of that offense, and that determination may deprive you of valuable civil rights, such as the right to vote or the right to hold public office or serve on a jury or possess a firearm?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  At this time, Mr. Fronczak, I'm going to ask Mr. Cronk to do a couple of things for us.  He will first summarize your plea agreement for purposes of our record here today, and then he'll proceed to establish the factual basis for your plea.  In the process of doing that, he may ask you some questions.

Mr. Cronk.

MR. CRONK:  Thank you, Your Honor.

The plea agreement calls for the defendant to enter a plea of guilty to Count 4 of the superseding indictment that was filed on July 11, 2006 charging the defendant with a violation of Title 18, United States Code, Sections 2251(a) and 2251(e), which is described in the indictment as attempted production of child pornography.

In exchange for that guilty plea, the government will dismiss at sentencing the remaining counts of the indictment,

1   and that's Counts 1, 2 and 3, and there will be no further

2   prosecution in federal court based upon the investigation in

3   this case.

4           The plea agreement sets forth the maximum and minimum

5   mandatory punishments in this case.  It sets forth that the

6   subject offense in Count 4 is punishable by a maximum term of

7   imprisonment of 30 years, a fine of up to $250,000, or both, a

8   period of supervised release and a special assessment of $100.

9           There's a mandatory minimum sentence of 15 years, and

10  he understands that -- the defendant understands that he will

11  remain in custody pending the imposition of sentence.

12          It also calls for the forfeiture of his camera and any

13  of the images produced and his home computer, at least the one

14  that contained evidence of his enticement of the victim in this

15  case.

16          The plea agreement sets forth some of the agreements

17  between the parties concerning what guideline sections would

18  apply to his case, including the application of Section 2G2.1,

19  which establishes a base offense level of 32, the fact that the

20  victim was under the age of 16, the fact that the defendant had

21  sexual contact with the victim, the fact that the defendant used

22  a computer in connection with the offense.

23          Both parties understand that there will be a

24  sentencing hearing in which either side can make whatever

25  presentation of evidence they deem appropriate.

The defendant understands he owes a $100 special assessment to the Crime Victims Fund.

There's a section on the waiver of his appeal, section 2255 and rule 410 rights. Essentially the defendant is waiving his right of appeal, except for if the U.S. Supreme Court or the Eighth Circuit find after today that the substantive basis for his plea of guilty and resulting conviction fails to state a crime upon which he could be convicted and any issue solely involving a matter of law brought to Your Honor's attention at the time of sentencing concerning which the court agrees further review is needed.

There's a limited waiver of his section 2255 rights or any other postconviction review in the case, except for -- he waives all of his rights with respect to postconviction review, except for a review based on ineffective assistance of counsel or prosecutorial misconduct if the grounds for such claim are not known to him or not reasonably knowable by him by today's date; that is, the time that he enters his plea here.

He understands it's a material breach of the plea agreement to file a notice of appeal that would be outside of these exclusions. And in rule 410 of the Federal Rules of Evidence, generally statements made in a plea agreement and before in court at the time of a plea are not usually admissible against a defendant in some later proceeding should he withdraw his plea or if the court should set aside his plea or

conviction, and in this case he's waiving his right under that, and by signing the plea agreement and the stipulation of facts in support of it and his statements in court today, he waives his right and the government would then be allowed to use those statements in any way in a future prosecution should this case be overturned or set aside or something of that nature.

The only other matters are fairly general. The defendant is voluntarily entering this plea, waiving his rights under the Sixth Amendment and the Fifth Amendment. He understands this is the entire agreement. He agrees that there's a factual stipulation in support of the agreement and the factual stipulation is accurate.

Those are the main provisions of the plea agreement, Your Honor.

THE COURT: All right. Go ahead and establish the factual basis with Mr. Fronczak.

MR. CRONK: I will, Your Honor.

This matter arose on December 28th when the parents of a 13-year-old girl discovered that their daughter was missing. They described that their daughter had sought permission to stay with a friend on the previous night, and the victim, the 13-year-old girl's mother agreed to let her stay out; but later she found out that her daughter had not stayed where she had indicated she would be staying, and they tried to call her on her cell phone and couldn't find her.

1    So they went to the police, the Muscatine Police
2  Department in Muscatine, Iowa, which is where the defendant --
3  excuse me, where the victim resided.  The police checked the
4  victim's computer and found e-mails from this defendant Daniel
5  Fronczak and looking further into the computer found that
6  Mr. Fronczak had been discussing with the victim over online
7  chats from December 10th to essentially December 27th that
8  indicated that the defendant had made travel plans to come to
9  Moline, Illinois, from Harrisburg, Pennsylvania, on December
10  27th.  The police checked that out and found that, in fact,
11  Mr. Fronczak had already traveled to Moline and had rented a car
12  from Enterprise Leasing.  He, in fact, traveled by American
13  Airlines.  They got a license plate for the number on the car
14  from Enterprise Leasing.  They continued to pursue that
15  investigation.
16    In the meantime the parents essentially were able to
17  make contact with their daughter.  The daughter had explained
18  that she was with someone.  I think a police officer actually
19  spoke with her on the telephone.  She informed Mr. Fronczak that
20  the police knew that she was missing, that her parents knew that
21  she was missing, and at that point the victim and Mr. Fronczak
22  decided that they should take her back to Iowa.  So they left
23  the motel in Moline, and Mr. Fronczak drove the victim back
24  across the state line to the Bettendorf McDonald's, the one
25  located near Interstate 74 and Middle Road.  The victim called

her mother and reported that she was stranded at McDonald's, and
her mother and father drove from Muscatine to Bettendorf to pick
her up.

They took her to the hospital where she was examined
for rape. The police drove on to the hospital in Davenport and
interviewed the victim. She described her relationship with
Mr. Fronczak and her activities with him. She admitted that she
met him over the Internet. They had agreed he would travel to
Muscatine to meet her. He asked her if it was all right with
her if he brought his video camera, and she agreed.
Mr. Fronczak brought his video camera with him. He drove to
Muscatine, picked her up on the 27th and took her back to the
motel in Moline that was near the airport. There's a LaQuinta
that they were at, and when they got to the room, Mr. Fronczak
had her undress, and he videotaped her while she was naked. The
following morning they had consensual intercourse.

Since I originally knew about this case, Mr. Fronczak
has shared with me that, during this encounter, he was not able
to successfully have intercourse with her. He did penetrate her
with his penis, but he determined that she was uncomfortable,
asked her if she wanted him to stop, and when she said yes, he
did.

The Muscatine police went to Moline to try to find
Mr. Fronczak. They were assisted by Moline police officers.
They drove to Mr. Fronczak's -- they found his leased vehicle at

the LaQuinta motel. They ascertained that he was still checked
in there. They went to the room, they met him. They asked him
if he was willing to speak to them. He agreed, invited them
into the room. They advised him of his Miranda rights, which he
waived, and during the questioning he admitted that he had had
sexual relations with the victim and he thought -- and he knew
that she was underage. He stated that he used a condom, and
police did recover a condom. He admitted online chatting with
the victim via his personal computer in Pennsylvania. He
admitted he had been chatting online with others since 2001 and
had traveled several times to meet women that he had met online.
He admitted that one was a 16- or 17-year-old girl that he
believed lived in Baltimore. He consented to a search of his
motel room. He signed a form accordingly. The video camera was
seized.

     The stipulation of facts isn't entirely clear on this,
Your Honor, but what happened is the police actually found some
discarded evidence in a separate part of the hotel. They opened
a plastic bag that Mr. Fronczak had apparently removed from the
room and taken down to a place to get rid of it, but they found
that bag and they opened it up, and it had some papers that
could be traced to Mr. Fronczak as well as a completely shredded
or mangled videotape. It was essentially destroyed. And I
asked the FBI if they could please look at it and get an image
of some kind off of it, and it was so destroyed, wrinkled, torn,

1  cut and damaged that they could do nothing with it.  It looks
2  like a massive -- it looks like a rat's nest, so to speak, so we
3  were not able to get anything off of the videotape.

4      Based on -- anyway, the other tape had nothing of
5  evidentiary value on it, although the tape does have what
6  appears to be a Christmas or birthday party of some kind on it
7  that Mr. Fronczak is the photographer for.  The evidence would
8  show that Mr. Fronczak destroyed the videotape because he was
9  afraid that he would get caught with it.  He knew it was illegal
10 to produce images of minors engaged in sexually explicit conduct
11 and he believed the videotape he made of the victim contained
12 images of a minor, that is someone under the age of 18,
13 containing the lascivious exhibition of the genitals or pubic
14 area of that minor.

15      Police in Iowa and Illinois contacted the Pennsylvania
16 State Police.  They assisted in the investigation.  They applied
17 for and obtained a search warrant for computers at
18 Mr. Fronczak's home.  Three computers were seized, but one of
19 the computers was in Mr. Fronczak 's bedroom.  This was at the
20 residence of his family, his mother and father.  An examination
21 of that computer resulted in the discovery of the chats between
22 Mr. Fronczak and the victim, including sexual overtures to her.
23 In his room the police found written correspondence received
24 from other young girls, including the picture of a young girl
25 from Wisconsin.  In the temporary Internet files, the police

1  found images of Mr. Fronczak and a picture of the victim.  That
2  would be the 13-year-old girl from Iowa.

3          Those are the facts in support of the charge in Count
4  4, Your Honor.

5          THE COURT:  Mr. Fronczak, are the facts that were
6  introduced here by Mr. Cronk correct, to the best of your
7  knowledge?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Have you been advised, Mr. Fronczak, of
10  what we refer to as the elements of the crime charged against
11  you, the things that the government must prove in order to be
12  able to convict you in the case?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  And are you comfortable that you
15  understand the elements of the crime charged?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  And, Mr. Schwartz, are you also
18  comfortable, based upon your discussion with your client, that
19  he does, in fact, understand the elements of the offense?

20          MR. SCHWARTZ:  Yes, Your Honor.

21          THE COURT:  Do either counsel for the government or
22  counsel for the defendant believe there are any additional facts
23  that need to be established to support the plea?

24          MR. CRONK:  No, Your Honor.

25          MR. SCHWARTZ:  No, Your Honor.

1        THE COURT: Mr. Fronczak, while this is covered in

2 your plea agreement, I'm also going to go over the maximum

3 possible consequence of your entering a plea today. There's a

4 maximum possible fine for this offense of $250,000. There's a

5 maximum possible imprisonment of 30 years in prison. There's a

6 mandatory minimum term of 15 years. There's the possible

7 forfeiture of any property used in connection with the

8 commission of the crime. There's the possibility of supervised

9 release for a term of not more than five years and a $100

10 assessment to the Victims Assistance Fund.

11        Do you understand that those are all possible

12 consequences of entering a plea today?

13        THE DEFENDANT: Yes, Your Honor.

14        THE COURT: This term of supervised release is imposed

15 in addition to any term of imprisonment. As a condition of

16 supervised release, the court will impose the condition that you

17 not commit any further federal, state, or local crime, that you

18 not possess any illegal controlled substances while on

19 supervised release. There are additionally standard conditions

20 of supervised release. If you were to fail to comply with those

21 conditions, that release status can be revoked and you can be

22 returned to prison for the remainder of the term without any

23 credit for time served on supervised release.

24        Do you understand that?

25        THE DEFENDANT: Yes, Your Honor.

1    THE COURT:  Have you and your attorney talked about

2   how the sentencing guidelines that we use in federal court might

3   apply to your case?

4    THE DEFENDANT:  Yes, Your Honor.

5    THE COURT:  And, Counsel, do we have some expectation

6   of what the guidelines will suggest in this case?

7    MR. WENDEL:  My calculations I think set the minimum

8   of the range at about 210 months, Your Honor.

9    THE COURT:  Is that consistent with your

10   understanding, Mr. Schwartz?

11    MR. SCHWARTZ:  We're figuring that we should be at the

12   15-year mark, which is right at the bottom of the guideline.

13    THE COURT:  All right.  Do you understand,

14   Mr. Fronczak, that the court ultimately will determine what

15   guidelines apply in your case; but once the court does that, the

16   court will use the guideline calculation for the guideline range

17   and use that as a factor to consider in determining the

18   appropriate sentence in your case?

19    THE DEFENDANT:  Uh-huh.

20    THE COURT:  Is that a "yes," sir?

21    THE DEFENDANT:  Yes, Your Honor; sorry.

22    THE COURT:  Do you also understand that under some

23   circumstances you or the government may have the right to appeal

24   any sentence that the court would impose?

25    THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  But do you understand that by entering
2    this plea agreement and by entering a plea of guilty that you
3    will have waived or given up your right to appeal or
4    collaterally attack all or part of the process leading up to the
5    sentence?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Have you had a full opportunity to confer
8    with your lawyer?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  And you're satisfied with your lawyer?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Mr. Schwartz, have you had full access to
13   the government's discovery material?

14         MR. SCHWARTZ:  Yes.

15         THE COURT:  Does it support a factual basis for the
16   plea?

17         MR. SCHWARTZ:  Yes, it does, Judge.

18         MR. CRONK:  Your Honor, there was one other thing.  I
19   know you asked and I didn't say anything.  I think it's
20   important for federal jurisdiction, other than the fact that the
21   victim crossed state lines -- and that's clearly included in the
22   factual basis, as well as in the charge; but the video camera
23   and the videotape, the statute provides a section that talks
24   about those materials having been produced or that the materials
25   used to produce the -- or attempted production of the image had

been mailed, shipped or transported in interstate or foreign commerce. And I should tell you that I've actually handled the Panasonic video camera, and it was not produced in the State of Iowa or the State of Illinois. I believe it was produced in Indonesia, and the videotape likewise was not produced in Iowa or Illinois.

THE COURT: For purposes of federal jurisdiction, that is important.

Mr. Fronczak, would you agree that the camera was, in fact, produced someplace other than either Illinois or Iowa?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Thank you, Mr. Cronk.

Mr. Fronczak, I understand, of course, that you've come here today having made a decision to enter a plea of guilty after your discussions with your counsel; but if you do that today, you will be giving up your right to a trial. So I want to go over with you some important rights that you would be waiving if you plead guilty today.

Do you understand that you have the right to plead not guilty to any offense charged against you and you would have the right to a trial with a jury?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you would have the right to the assistance of a lawyer at every stage of the pretrial and trial process?

1     THE DEFENDANT:  Yes, Your Honor.

2     THE COURT:  Do you understand that you would have the

3 right to have your case come to trial quickly, and it would be a

4 public trial?

5     THE DEFENDANT:  Yes, Your Honor.

6     THE COURT:  Do you understand, sir, that a jury of

7 citizens would be selected to hear your case and you would have

8 the right to participate in the process of selecting those

9 jurors?

10     THE DEFENDANT:  Yes, Your Honor.

11     THE COURT:  Do you recognize that at trial you would

12 be presumed to be innocent and the government would have to

13 prove your guilt beyond a reasonable doubt on every element of

14 the offense charged against you?

15     THE DEFENDANT:  Yes, Your Honor.

16     THE COURT:  Do you understand you would have the right

17 at the trial to see and hear all of the witnesses and to have

18 them cross-examined in your defense?

19     THE DEFENDANT:  Yes, Your Honor.

20     THE COURT:  Do you understand you would have the right

21 to the issuance of subpoenas or court orders to compel persons

22 to come to the trial to testify in your defense?

23     THE DEFENDANT:  Yes, Your Honor.

24     THE COURT:  Do you recognize that at a trial you would

25 have the right on your own part to decline to testify unless you

1　voluntarily elected to do so in your own defense?

2　　　　　THE DEFENDANT:  Yes, Your Honor.

3　　　　　THE COURT:  And do you understand that should you

4　decide not to testify or not to put on any evidence at all, the

5　fact that you did not do so cannot be used against you?

6　　　　　THE DEFENDANT:  Yes, Your Honor.

7　　　　　THE COURT:  Do you understand you would have the right

8　to a unanimous verdict by the jury and the right to appeal from

9　any verdict against you with the assistance of a lawyer?

10　　　　　THE DEFENDANT:  Yes, Your Honor.

11　　　　　THE COURT:  And do you further understand that by

12　entering a plea of guilty, if that plea is accepted by the

13　court, there will be no trial and you will have waived or given

14　up your right to a trial as well as these other rights we've

15　been discussing?

16　　　　　THE DEFENDANT:  Yes, Your Honor.

17　　　　　THE COURT:  Do you recognize if your plea is accepted,

18　you'll be adjudged guilty, and there will be no further

19　proceedings other than the sentencing?

20　　　　　THE DEFENDANT:  Yes, Your Honor.

21　　　　　THE COURT:  And do you understand that if you plead

22　guilty, a presentence investigation report will be prepared, and

23　the court will then decide whether or not to accept your plea

24　agreement, and if the court decides to reject the plea

25　agreement, you would be given an opportunity to withdraw your

1  plea and change it to not guilty?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Do either Mr. Fronczak or Mr. Schwartz

4  have any questions or anything to add before I take the plea?

5          MR. SCHWARTZ:  Not at this time, Judge.

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Do you still wish to plead guilty,

8  Mr. Fronczak?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  How do you plead to the charges; guilty or

11 not guilty?

12         THE DEFENDANT:  Guilty, Your Honor.

13         THE COURT:  Based upon my observation of Mr. Fronczak

14 here today and his demeanor, it is the finding of the court in

15 the case of the United States versus Daniel Fronczak, Jr., that

16 the defendant is fully competent and capable of entering an

17 informed plea, that the defendant is aware of the nature of the

18 charges and the consequence of the plea and that the plea of

19 guilty is a knowing and voluntary plea supported by an

20 independent basis in fact containing each of the essential

21 elements of the offense.

22         I further specifically find the plea is voluntary, not

23 the result of force, threats or promises, except promises

24 contained in the plea agreement.  I find the defendant knows the

25 maximum punishment possible.  I find that he knows of his rights

1  of jury trial and that he has voluntarily waived his rights of

2  jury trial.

3       I find there is a factual basis for the plea.  The

4  plea is, therefore, accepted and the defendant is now adjudged

5  guilty of the offense.

6       Mr. Schwartz, under the circumstances, there's no

7  issue with regard to the continued detention of Mr. Fronczak,

8  correct?

9       MR. SCHWARTZ:  Right, Judge.

10      THE COURT:  Mr. Fronczak, this matter will be referred

11 to the probation office for preparation of that presentence

12 investigation report.  There's someone here today to start that

13 process with you.  A written presentence report will be prepared

14 to assist the court in making the sentencing decision in your

15 case.  You will be asked to provide information for that report.

16 You'll be interviewed for that purpose.  Whenever you are, you

17 may have Mr. Schwartz present, if you wish.  You and your

18 counsel will have an opportunity to read the presentence report

19 before the sentencing hearing and to offer any objections that

20 you wish to make to the contents of that report, and then at the

21 time of the sentencing hearing, both you and your attorney will

22 be given an opportunity to speak to the court to raise any

23 issues that you wish to raise at that time.

24      Do you understand that, sir?

25      THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  The U.S. Probation office will hold a

2   status conference with both counsel on February 27, 2007, at

3   8:30 in the morning.  Counsel must be available for

4   participation in that conference.  Following that status

5   conference, the U.S. Probation office will notify the district

6   court if the case is ready for sentencing.  If it is not, then

7   an additional status conference will be set and held by the

8   probation office.

9          Are there any other matters to come before the court

10  with regard to Mr. Fronczak?

11         MR. SCHWARTZ:  No, Judge.  I would like to tender

12  back, I think I'm supposed to return the jury questionnaires, or

13  no.  I thought --

14         THE COURT:  You can simply provide that to the clerk.

15  She'll take care of that.

16         MR. CRONK:  I'll return those, Your Honor, and nothing

17  further from the government.

18         MR. SCHWARTZ:  Thank you, Judge.

19         THE COURT:  We're in recess.

20         (Proceedings concluded at 2:08 p.m.)

21

22

23

24

25

C E R T I F I C A T E

I, the undersigned, a Certified Shorthand Reporter of the State of Iowa, do hereby certify that I acted as the official court reporter at the hearing in the above-entitled matter at the time and place indicated.

That I took in shorthand all of the proceedings had at the said time and place and that said shorthand notes were reduced to computer transcription under my direction and supervision, and that the foregoing computer transcription pages are a full and complete transcript of the shorthand notes so taken.

Dated at Des Moines, Iowa, this 25th day of May, 2007.


_____
CERTIFIED SHORTHAND REPORTER